IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| John E. Colletta, | ) | Case No. 24-08265 |
| | ) | Honorable David D. Cleary |
| Debtor. | ) | |

## <u>NOTICE OF MOTION</u>

PLEASE TAKE NOTICE that on the **31st day of July 2024 at 10:00 a.m**. or as soon thereafter as counsel can be heard, I shall appear before the Honorable David D. Cleary, Bankruptcy Judge, in the room usually occupied by him as Courtroom 644 in the United States Bankruptcy Court in the Everett McKinley Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, or electronically as described below and shall present the **Debtor's Motion to Convert from a Chapter 7 to a Chapter 13**, a copy of which is attached hereto and herewith served upon you, and shall pray for the entry of an Order in compliance therewith.

**All parties in interest, including the movant, may appear for the presentment of the motion either in person or electronically using Zoom for Government.**

**To appear by video,** use the link: https://www.zoomgov.com/.   Enter the meeting ID.

**To appear by telephone,** call Zoom for Government at 1-669-254-5252 or 1-646-828-7666.  Then enter the meeting ID.

**Meeting ID and password.**  The meeting ID for this hearing is **161 122 6457** and **Passcode: Cleary644**.  The meeting ID and further information can also be found on Judge Cleary's web page on the court's web site.

/s/John H. Redfield
Crane, Simon, Clar & Goodman
135 S. LaSalle Street, Suite 3950
Chicago, Illinois 60603
(312) 641-6777

## CERTIFICATE OF SERVICE

The undersigned, being first duly sworn on oath deposes and states that a copy of the foregoing Notice and Motion was caused to be served either via the Court's Electronic Filing System (ECF), email, or first-class U.S. Mail as indicated to all parties listed on the below Services List on July 23, 2024.

/s/John H. Redfield

## SERVICE LIST

**VIA ECF**

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

David P Leibowitz, ESQ
dleibowitz@lodpl.com

**Via Email**
John E. Colletta

**VIA FIRST CLASS U.S. MAIL**

Chase Card
P.O. Box 6294
Carol Stream, IL 60197-6294

City Bank
PO Box 6052
Carol Stream, IL 60197

Discover Card
P.O. Box 6103
Carol Stream, IL 60197-6103

GM Financial
PO Box 78143
Phoenix, AZ 85062-8143

Goldman Sachs Bank USA
Salt Lake City Branch
PO Box 70321
Philadelphia, PA 19176-0321

Home Depot Credit Services
PO Box 6060
Carol Stream, IL 60197-6060

TLP 170 Prairie Lake LLC c/o
Martin Kedziora @Greenberg Traurig
77 W. Wacker Dr., Ste. 2500
Chicago, IL 60601

2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:                                    )
                                          )      Chapter 7
John E. Colletta,                         )      Case No. 24-08265
                                          )      Honorable David D. Cleary
                        Debtor.           )

### DEBTOR'S MOTION FOR ORDER CONVERTING CHAPTER 7 TO CHAPTER 13

John E. Colletta, the Debtor herein, by and through his attorneys, John H. Redfield and

the law firm of Crane, Simon, Clar & Goodman, files his Motion for an order Converting his

Chapter 7 Bankruptcy Case to a Case Under Chapter 13 of the Bankruptcy Code ("Motion"), by

stating as follows:

### Introduction

1.      The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy

Code on June 4, 2024 ("Petition Date), and the case has not been converted under Section 1112,

1307, or 1208 of the Code.

2.      Statutory predicates for this Motion are 11 U.S.C. Section 706(a) and Federal

Rules of Bankruptcy Procedure 1017(f).

3.      Debtor is eligible to be a debtor under Chapter 13 of the Bankruptcy Code in that

Debtor is an individual with regular income as that term is defined in Section 109(e) of the Code.

4.      The Debtor intends to file a Chapter 13 Plan within such time as provided by the

Rules.

**Factual Background**

5.      The Debtor is 67 years old and for the last 20 years, the Debtor, as a sole proprietorship d/b/a/ Direct Packaging and Filling, was in the business of selling household cleaning products, such as laundry detergents, softeners, dish detergent, and all-purpose cleaners. He would purchase large quantities of the above products, and then sell smaller quantities to wholesalers, such as grocery stores with a markup.

**Debts of the Debtor**

6.      The Debtor has general unsecured debts totaling $439,251.43 of which $385,175.00 is held by TLP 170 Prairie Lake LLC ("Prairie"), and the balance is credit card debt.

7.      In 2022 or 2023, Prairie acquired the Debtor's leased business premises located at 170 Prairie Lake Rd., East Dundee, Illinois 60118 ("Premises"), and Prairie wanted to replace the Debtor as a tenant because he had a below market lease.

8.      In or about February, 2023, Prairie filed a disputed forcible entry and detainer suit in Kane County, and thereafter, the Debtor and Prairie entered into an agreed order settling the dispute, which gave the Debtor significant time to vacate the Premises.

9.      In or about April, 2024, Prairie obtained a default judgment against the Debtor in the Circuit Court of County because Prairie allegedly had damages of approximately $429,301.79 caused by the Debtor's property not removed from the Premises.

10.      Within 90 days of the filing of this chapter 7 case, Prairie obtained a turnover of $44,126.79 from the Debtor's business bank account pursuant to the default judgment.

11.      The Debtor has one secured debt of $59,066.19 that is collateralized by his 2024 GMC Sierra truck.

**Property of the Debtor**

12.     The Debtor has an inventory of household cleaning products at cost of approximately $250,000 ("Inventory") located at 130 Oakwood, Lake Zurich, Illinois.

13.     The Debtor has a lease of the premises at 130 Oakwood, Lake Zurich, which terminates May 31, 2028, and is subleased to Powerhouse Sales, Inc.

13.      The Debtor believes that he will be able to sell the Inventory for approximately $300,000 over time in the ordinary course of his business.  The debtor further believes that the Inventory has an auction value of approximately $25,000, which is 10% of cost.

14.     Also, located at 130 Oakwood in Lake Zurich is packaging equipment, plastic injection molding equipment, molds, and auxillary equipment such as hoppers, pumps, and compressors that the Debtor believes he can sell over time individually without incurring administrative use and occupancy rent for approximately $170,000.  The Debtor further believes the auction value of the equipment is approximately $40,000.

**Transfers of Real Property**

15.     The Debtor did not tell his wife, Yvonne Colletta ("Yvonne"), about the Cook County lawsuit by Prairie or its default judgment.

16.     At the end of April, 2024, Yvonne found out about the large judgment of Prairie when Prairie attached the Debtor's business account containing about $44,000.

17.     When Yvonne discovered the $439,251.43 judgment of Prairie, she was extremely upset with her husband, the Debtor, and demanded that he transfer his one-half (1/2) interests to her in the following real properties:

a.      Vacant lot in Delevan, Wisconsin:

b.      Vacant lot in Williams Bay, Wisconsin:

c.        2 adjacent vacant lots in Moston, Wisconsin; and

d.        Single family residence at 1335 County Rd. 79, Center, Alabama.

18.        Unprompted by anybody, the Debtor realized the above transfers to his wife must be disclosed; therefore, he amended his schedules accordingly.

### Projected Income of Debtor and his Wife

19.        The Debtor intends to go into the related business of selling household cleaning products to wholesalers on a commission basis.  Based on his experience and knowledge of the industry, the Debtor believes he will be able to have gross sales of $6,700 and expenses of $700, netting $6,000 per month.

20.        Yvonne, the Debtor's wife, recently organized Geneva Packaging Solutions, LLC, as the 100% member, to sell packaging supplies such as pallet wrap, tape, boxes, containers, 5 gallons pails, one-gallon bottles, and other packaging supplies.  The Debtor is familiar with selling packaging supplies and will assist his wife in advancing her business.  The Debtor is of the opinion that his wife will be able to net a profit of about $6,000 per month as well.

21.        The Debtor's projected monthly income and expenses as represented by his Amended I and J Schedules are attached hereto as **Exhibit 1.**

### Proposed Chapter 13 Plan of the Debtor

22.        The Debtor will file a chapter 13 plan paying his general unsecured creditor a distribution of 100% of their claims ("Plan").

23.        The Plan will provide that the Debtor will liquidate his inventory and equipment, as stated above, in the approximate sum of $470,000 and immediately remit the sales proceeds to the chapter 13 trustee as realized.

4

24.     During the liquidation process, the debtor will pay the chapter 13 trustee $3,000 per month until the creditors are paid in full.

25.     If the creditors are not paid in full as a result of the above, the Debtor will liquidate some or all of the above real estate, and pay the proceeds of his one-half interest to the chapter 13 trustee until his creditors are paid in full.

26.     The Debtor is of the opinion that the creditors will be paid substantially more in a chapter 13 than a chapter 7 because the Debtor will obtain multiple times more for the inventory and equipment. In addition, the creditors will benefit, in the interim, from the income of the Debtor and his wife at the rate of $3,000 per month. Also, the creditors will avoid significant administrative expenses of the trustee and his professionals such as trustee fees, attorney fees, accounting fees, auctioneer's fees and real estate brokerage fees.

### 341 Meeting of Creditors

27.     On July 11, 2024, the Debtor attended the originally scheduled meeting of creditors with his attorney by zoom.  Prairie's attorney was also present.  At the meeting the chapter 7 trustee, David Leibowitz ("Trustee"), was informed that the Debtor intended to convert the chapter 7 case to a chapter 13 case.  Because the Debtor could not cause the video on his cellphone to operate, and he only appeared by audio, the meeting was continued to July 19, 2024, without examination.  On July 19, 2024, the Debtor and his attorney appeared together by zoom but the Trustee could not conduct the meeting because the Trustee had an unscheduled conflict. The Trustee and the Debtor agreed that the examination of the Debtor would be made in conjunction with the contesting of this Motion.

5

**Argument**

28.     Prior to *Marrama v. Citizens Bank of Mass.*,549 U.S. 365, 127 S.Ct. 1105, !66 L.Ed.2d 956 (2007), many courts treated the debtor's right to convert under § 706(a) as absolute. The Supreme Court carved out a limited exception to the absolute rule stating that if the debtor is not acting in good faith the motion to convert may be denied. The Supreme Court did not define lack of good faith, or bad faith. The exception to not converting the case to Chapter 13 is limited to *extraordinary* cases. Bad faith is to be determined by the totality of the circumstances on a case-by-case basis. Once the debtor demonstrates that there has been no prior conversion of the case and he is eligible for relief pursuant to 11 U.S.C. § 109(e), the burden shifts to the objecting party. *In re Bradley*, 649 B.R. 693, 699-701 (Bankr. D.S.C. 2023).

29.     In the case of *In re Ortega*, 434 B.R. 889, 893 (Bankr. D.KS. 2010), the Court stated that "extreme circumstances are required" to deny conversion to chapter 13 and enumerated the following factors to consider as to whether the case should be converted:

> The nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

30.     The Debtor is eligible for a chapter 13 case because on the petition date of June 4, 2024, his secured debt was $59,046.19 and his unsecured debt was $434,251.43 according to his bankruptcy schedules. The debt limit for chapter 13 cases on June 4, 2024 was $2,750,000 pursuant to 11 U.S.C. 109(e). The Debtor is far below the statutory debt limit for a chapter 13 case.

31.     In this case, the Debtor came forth and amended his schedules to show the transfers of the one-half interests in real estate before the meeting of creditors without being

6

prompted by the Trustee or the creditors.  It also came after his wife settled down and realized the realities of the very recent and large default judgment of Prairie.  The Debtor had the intent to convert his case to a chapter 13 case before the start of the 341 meeting of creditors.

32.    The filing of the chapter 13 case will be a more efficient and product way of liquidating the property of the bankruptcy estate.  The inventory of the Debtor will be sold in the ordinary course of the Debtor's business at about 12 times the value that would be realized by the Trustee in an auction.  The Debtor is willing to shop his equipment that will bring a substantial greater return than an auction.  The Debtor and his wife are willing to come out of retirement to operate businesses to provide income to the creditors and paid them off in full.

33.    In a chapter 7 liquidation, the inventory and equipment will sell for far less than what the Debtor will realize in the ordinary course of his business.  The chapter 13 will avoid a preference complaint against Prairie and adversary complaints against the Debtor's wife pursuant to 11 U.S.C. § 363(h) to partition her real properties.  The creditors will not have to incur chapter 7 professional fees of the Trustee such as attorneys' fees, accountant fees, real estate broker fees, auctioneer fees and the Trustee's statutory fees.  Furthermore, the Debtor will pay the real estate taxes and any necessary insurance regarding the real properties.  The Chapter 13 case will realize substantially greater proceeds for creditors and a much lower cost of liquidation that would be incurred in a chapter 7 case.

34.    The Debtor filed a chapter 7 case immediately after Prairie levied his business bank account for $44,126.79 pursuant to a post-judgment citation proceeding that was instituted after Prairie obtained a default judgment.  After getting over the trauma of the Prairie judgment, the Debtor has been forthright and honest in disclosing his property and state of financial affairs.

7

After considering the totality of the circumstances, this is not an "extreme" case. The creditors will be much better off in a chapter 13 than a chapter 7. The Debtor is not acting in bad faith.

WHEREFORE, the Debtor prays for an order converting this case from a case under Chapter 7 to a case under Chapter 13, and for such further order as the Court deems just and proper.

Respectfully submitted,

John E. Colletta,

By:/s/John H. Redfield
One of his attorneys

**Debtor's Counsel:**
John H.  Redfield
CRANE, SIMON, CLAR & GOODMAN
135 S. LaSalle St., Ste. 3950
Chicago, IL 60603
312-641-6777
jredfield@cranesimon.com

8